# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 23-1549V

|  |  |
|---|---|
| CYNTHIA BRANDT, *individually and as administrator of the estate of* DAVID M. TAYLOR,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br><br>Filed: July 30, 2025 |

*Jonathan Ashton, Gallon, Takacs & Boissoneault Co. L.P.A., Maumee, OH, for Petitioner.*

*Emily Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DISMISSAL OF DEATH BENEFIT CLAIM[1]

On September 8, 2023, Cynthia Brandt, as administrator of the estate of David M. Taylor, filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged a causation-in-fact claim: that after Mr. Taylor received an influenza ("flu") vaccine on September 15, 2020, he experienced Guillain-Barré syndrome ("GBS") resulting in his death on December 10, 2020. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

In January 2025, Respondent filed a Rule 4(c) Report in which he recommended a finding of entitlement for a Table flu/GBS claim, but dismissal of the death claim as untimely under Vaccine Act Section 16(a)(3)'s 24-month statute of limitations running from the date of death. ECF No. 22. Petitioner subsequently filed an unopposed motion to file an amended petition "to clarify that the death claim is based on significant aggravation as described in [Section] 16(a)(3)." Status Report, ECF No. 24. I granted the motion, but I noted the preliminary view that the limitations statute did not include a longer filing period for a significant aggravation-death claim. Scheduling Order entered Feb. 28, 2025, ECF No. 25. Respondent agreed with that position in an "amended," essentially supplemental, Rule 4(c) Report filed March 26, 2025, ECF No. 28. But Petitioner maintained her argument that the significant aggravation death claim had been timely filed. Amended Petition filed Mar. 10, 2025, ECF No. 26; Response filed Apr. 25, 2025, ECF No. 29. The matter is ripe for adjudication.

## I.    Factual History

Mr. Taylor received the at-issue flu vaccine on September 15, 2020, during a cardiology appointment. Ex. 7 at 89 – 92. His prior medical history included hypertension, chronic obstructive pulmonary disease ("COPD"), premature ventricular contractions, and peripheral vascular disease. *Id.* at 89. He was "completely independent in ADLs [activities of daily living], mobile without a device, and cognitively intact." Ex. 2 at 293.

On or about ten days post-vaccination, on September 25, 2020, Mr. Taylor developed "rapid onset weakness and numbness in all extremities limiting his ability to ambulate." The following day, he sought emergency attention and was admitted to University Hospitals Cleveland Medical Center ("UHCMC") due to concern for GBS. Ex. 2 at 255 (admission note); *see also id.* at 646 (discharge summary).[3] Mr. Taylor's weakness progressed, he had trouble breathing and swallowing, and he was kept in the intensive care unit. *Id.* at 646. He started a five-day course of IVIg on September 27th, and a later EMG showed motor and sensory demyelinating polyneuropathy consistent with the GBS diagnosis. *Id.*

Overnight on September 27 – 28, 2020, Mr. Taylor experienced multiple episodes of atrial fibrillation and rapid ventricular rate, prompting intubation. Ex. 2 at 301 – 305; 646. Concurrently, he started taking antibiotics for suspected pneumonia, *id.* at 301. A later gram stain was positive for *e coli*, *id.* at 203.

---

[3] Petitioner states that Mr. Taylor's GBS symptoms began *five* days post-vaccination, citing to the hospital discharge/transfer summary that describes the onset more generally as "several days after an influenza vaccine." Amended Petition, ECF No. 26 at ¶ 3 (citing Ex. 2 at 645 – 52. But this discrepancy does not impact Petitioner's undisputed entitlement for a Table flu/GBS claim or the untimeliness of the death claim.

Mr. Taylor was also diagnosed with heart failure, with a September 29th echocardiogram finding decreased left ventricular systolic function (estimated ejection fraction of 40%). *Id.* at 142, 646. He had periodic episodes of hypotension attributed to autonomic instability in the setting of GBS. *Id.* at 646. On October 8th, he underwent a percutaneous tracheostomy[4] and received a PEG tube. *Id.* at 539 – 44, 646.

Over the next two months, Mr. Taylor was an inpatient at several hospitals and long-term care centers.[5] Of note in early November 2020, his GBS symptoms improved after multiple plasmapheresis treatments. Ex. 4 at 90. But he continued to suffer from chronic respiratory failure with dependence on invasive mechanical ventilation. *Id.*

On November 30, 2020, Mr. Taylor's tracheostomy tube was removed. Ex. 5 at 800 – 06. In subsequent days, he suffered acute respiratory distress prompting a transfer to critical care, Ex. 6 at 701. He then decided to enter inpatient hospice, *id.* at 128 – 29. After weaning off supplemental oxygen and other medications, Mr. Taylor passed away on December 10, 2020. Ex. 6 at 12 – 13. The death certificate lists the immediate cause as congestive heart failure. Ex. 8 at 1. Pneumonia, gastrointestinal bleeding, and acute renal failure are listed as other contributing conditions. *Id.*

## II.    Table Flu/GBS Injury Claim – Ruling on Entitlement

Respondent **concedes** that Petitioner, on behalf of Mr. Taylor's estate, is entitled to compensation for a Table flu/GBS injury. Rule 4(c) Report at 1, 5 – 6 (citing 42 C.F.R. §§ 100.3(a)(XIV)(D), (c)(15). Respondent also agrees that Petitioner has satisfied all legal prerequisites for compensation under the Act – including its severity requirement, on the grounds that while Mr. Taylor underwent inpatient hospitalization and surgical intervention (his tracheostomy). *Id.* at 6 (citing 42 C.F.R. § 11(c)(1)(D), Ex. 2 at 543). Accordingly, Respondent concedes that Petitioner is entitled to compensation for Mr. Taylor's surviving injury claim. *Id.* (adding that the corresponding damages are limited in scope to "Mr. Taylor's past pain and suffering attributable to GBS for the period from the onset of his

---

[4] Percutaneous is defined as "through the skin." Dorland's Med. Dictionary Online (hereinafter "Dorland's"), *Percutaneous*,
https://www.dorlandsonline.com/dorland/definition?id=37664&searchterm=percutaneous (last accessed July 29, 2025).

Tracheostomy (or tracheotomy) is "creation of an opening in the anterior trachea for insertion of a tube to relieve upper airway obstruction and facilitate ventilation." Dorland's, *Tracheostomy*,
https://www.dorlandsonline.com/dorland/definition?id=50503&searchterm=tracheostomy (last accessed July 29, 2025).

[5] The Rule 4(c) Report (ECF No. 22) and the Amended Petition (ECF No. 26) contain some additional details about Mr. Taylor's treatment course, but do not discuss the plasmapheresis treatments.

symptoms on September 25, 2020, until his death on December 10, 2020, in addition to past unreimbursed expenses and any loss of earnings during that period").

**In view of Respondent's position and the evidence of record, I find that Petitioner on behalf of Mr. Taylor's estate is entitled to compensation for the surviving Table flu/GBS claim.**

### III.    Death Benefit Claim - Dismissal

#### A. Petitioner's Position

It is undisputed that the September 2023 petition was filed nearly 33 months after Mr. Taylor's December 2020 death – and nearly 36 months after his vaccination, GBS onset, and acute respiratory failure.

In the Amended Petition (ECF No. 26), Petitioner alleged that the flu vaccine and subsequent GBS "caused Mr. Taylor to suffer numbness throughout his extremities, respiratory issues requiring a tracheotomy and a ventilator, gastrointestinal bleeding, nerve damage resulting in paraplegia, pneumonia, acute on[set?] chronic respiratory failure, and ultimately death." Petitioner further alleges that Mr. Taylor's vaccine and resulting GBS significantly aggravated *unspecified* "underlying" and "preexisting" medical conditions. *Id.* at Preamble and ¶ 15. Petitioner contends that a claim for "significant aggravation of preexisting conditions resulting in death" is subject to a longer limitations period under Section 16(a)(3). *Id.* at ¶ 16.

Petitioner argues that a "plain reading" of 16(a)(3) supports "two separate time periods in which to file a petition based on the cause of action alleged in the petition." ECF No. 29 at 3. According to Petitioner, on the one hand, a claim alleging death to be the direct result of vaccination is only timely if filed within 24 months of the death. But "[i]f a petition alleges that death is caused from significant aggravation of pre-existing health conditions as a result of a vaccine, Petitioner has no more than 48 months after the date of the occurrence of the first symptom or manifestation [of that significant aggravation], to timely file" – without any filing deadline running from the date of death. *Id.* Petitioner contends her filing comports with the second alleged option. *Id.* at 3 – 4.

In an effort to bolster this argument, Petitioner emphasizes the disjunctive word "or" within Section 16(a)(3) ("48 months after the date of the occurrence of the first symptom or manifestation of onset **or** of the significant aggravation of the injury from which the death resulted…"). *Id.* at 4 (citing *Ruben v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 264, 1991 WL 3610 (Fed. Cl. 1991) (discussing "or" as disjunctive). She also

contends that prior cases do not address the limitations period for a "significant aggravation" death claim as alleged herein. *Id.* at 5 – 7.[6]

### B. Respondent's Position

Respondent initially did "not dispute that Mr. Taylor's death was related to complications from GBS," but deemed the death claim untimely because it was filed over 24 months after Mr. Taylor's death. Rule 4(c) Report at 4-5. In his supplemental filing (ECF No. 28 at 2) Respondent refined the nature of his objection (in reaction to Petitioner's contentions). He maintained that the death benefit was unavailable to Petitioner because Section 16(a)(3) contains "two conjunctive requirements": first, the petition must be filed within 24 months after the vaccinee's death, and second, the petition must also be filed within 48 months of the onset of symptoms or significant aggravation. *Id.* Accordingly, Petitioner's "clarified" pleadings did not change Respondent's position as to the allowable scope of the claim. *Id.* at 2 – 3.

### C. Analysis

The death claim remains untimely despite Petitioner's arguments. I provided preliminary analysis on this point in my Scheduling Order (*see* ECF No. 25). And Petitioner's construction of the relevant Act provision to the contrary is unpersuasive.

Section 16(a)(3) is repeated, with added emphasis and annotations, below:

> If a death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such death [1] after the expiration of 24 months from the date of the death **and** [2] no such petition may be filed more than 48 months after the date of the occurrence of the first symptom <u>or</u> manifestation of onset or of the significant aggravation of the injury from which the death resulted.

In short, the key conjunctive word is "<u>and</u>" – establishing that a death claim must satisfy these two filing requirements.

---

[6] Citing *Griglock v. Sec'y of Health & Human Servs.*, No. 09-275V, 2011 WL 839738 (Fed. Cl. Spec. Mstr. Feb. 11, 2011), *mot. for rev. denied*, 99 Fed. C. 373 (2011), *aff'd*, 687 F.3d 1371 (Fed. Cir. 2012); *Janni ex rel. Janni v. Sec'y of Health & Hum. Servs.*, No. 22-285V, 2023 WL 3584546 (Fed. Cl. Spec. Mstr. Apr. 19, 2023); *Templeton ex rel. Templeton v. Sec'y of Health & Hum. Servs.*, No. 22-210V, 2023 WL 9060854 (Fed. Cl. Spec. Mstr. Nov. 21, 2023).

Thus, for example, a claimant alleging that the flu vaccine caused GBS leading to the injured party's death would not only have to initiate suit within two years of the death, and *also* demonstrate that the suit was filed within four years of the GBS onset. The statute tacks on an extra two years to act in the case of death, allowing for an injured party to experience that long a timeframe of injury sequelae *before* death. *See Griglock v. Sec'y of Health & Hum. Servs.*, 687 F.3d 1371, 1376 (Fed. Cir. 2012) (stating that "the estate satisfied the requirements for a timely petition for death benefits under [Section 16(a)(3) … both the twenty-four-month and forty-eight-month requirements"), citing *Zatuchni v. Sec'y of Health & Hum. Servs.*, 516 F.3d 1312, 1317 (Fed. Cir. 2008) ("'if a death occurred,' a petition must be filed within 24 months of the death and no more than 48 months after the onset of symptoms").

For a "significant aggravation-death" claim, as alleged here, the four-year timeframe runs from the onset of the significant aggravation (as reflected by the medical records). But the two-year timeframe running from the date of death still applies. Here, the record establishes that (a) Mr. Taylor's GBS onset likely began on or around September 25, 2020, (b) his alleged underlying symptoms may have worsened in the interim months, and (b) he died on December 10, 2020. Had Mr. Taylor lived through some time in the fall of 2022, and then a claim brought within two years of death (meaning the fall of 2024), the claim would be timely. But his sequelae did *not* last for so long a timeframe, and once they ended in his untimely death, the two-year portion of the death benefit statute began to run.

Petitioner's construction, by contrast, illogically suggests that the statute permits a "significant aggravation-death" benefit claim to be filed simply within four years of the significant aggravation, without reference to the date of death. But this is *not* a plain reading of the statute. She has not furnished any extra-statutory support for her position, nor has she referenced any pertinent legislative history. The *Ruben* opinion supports the (unremarkable) understanding of "or" being disjunctive. But *Ruben* concerned an entirely different section of the Vaccine Act – and therefore did not attempt to parse Section 16(a)(3) with its *several* "ands" and "ors".

Petitioner also contends that *Griglock*, *Janni*, and *Templeton* are distinguishable for focusing on "direct causation," ECF No. 29 at 6 – 7. But neither the Court nor the petitioners in such past cases (each represented by counsel with considerable Vaccine Program experience) recognized any potential for an alternative "significant aggravation-death" limitations period. And Petitioner has not otherwise alleged - nor does my review of the record support – any rationale for equitable tolling of Section 16(a)(3).

**Conclusion and Scheduling Order**

**Based on my review of the record as a whole, I find that Petitioner is entitled to compensation for a Table flu/GBS injury, but that the death claim must be dismissed.**

The parties should now attempt to informally resolve the appropriate award of damages for the Table flu/GBS injury. A summary of prior compensation determinations for such injuries can be found in *Ashcraft v. Sec'y of Health & Hum. Servs.*, No. 23-1885V, 2025 WL 882752, at *1 – 4 (Fed. Cl. Spec. Mstr. Feb. 27, 2025).

**<u>Within 45 days, by no later than Monday, September 15, 2025</u>, Petitioner shall file a Joint Status Report updating on the parties' efforts to informally resolve damages.**[7] The status report shall specifically state the date on which Petitioner conveyed, or intends to convey, a current damages demand and supporting documentation to Respondent. If Petitioner's demand is ready for consideration, the status report shall state the date on which Respondent responded or intends to respond thereto. If a status conference would be helpful to set further proceedings, one may be requested.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Petitioner previously represented that the case does not involve a Medicaid lien, ECF No. 24.